Mr. Panak, am I pronouncing that correctly? Panak, Your Honor. Thank you. Thank you very much. Welcome. Thank you, Your Honor. It's a pleasure to be here. May it please the Court, Mark Panak, U.S. Department of Justice. I represent the United States of America, the defendant, the appellant, in this case. Four circuits, four of this Court's sister circuits, have without dissent accepted the basic position of the United States proffered in this appeal, and that is where a state future payment statute is at issue in the Federal Tort Claims Act case. And the United States has requested, properly under that state statute, the application of it. Then the district court has a permanent duty to craft the award of future medical damages in a manner that approximates the damages the future payments authorize or set forth in that state statute. Most recently, the Fifth Circuit has held, in a case that we submitted to the Court with the 20HA letter a week ago, that this will apply to the Texas statute. The Tenth Circuit has applied it in the Hill case to a Colorado statute. The Ninth Circuit in the Dura case to a Washington state statute. The Fourth Circuit in the Cibola case to the California statute. All of these statutes have three things in common. One, the amount of future medical damages must be specified. The Missouri statute says... The Fifth Circuit refused to do it in Van Hoy, right? Did do it in Van Hoy precisely for that reason, Your Honor, because the Louisiana statute in that case... Yeah, what's the difference? Why? That was the difference. That was the controlling difference that the Lee case itself examined and distinguished because that was the Fifth Circuit precedent. And the Louisiana statute said that no specific amount of future damages would be specified. It was an unquantified finding that would then be paid out of a state compensation fund for the lifetime of the plan as needed. Now, the state statutes that we are concerned with here, including the Missouri statute, are quite different. And that was the distinction that the Court and Lee drew, that the future payments for medical damages here are quite specific and require to be specific under 538.515 of the Missouri statute. But under the Missouri statute, what discretion does the trial court have under the Watts case to make a lump sum payment? The Missouri statute, under Watts, gives the district court discretion to do so in whole and in part, but it does not give discretion to ignore it completely, to refuse to do so at all. And Watts says this when it says it requires, plainly requires, quote, unquote, the district court to exercise its discretion in whole or in part. You don't think the district court has discretion under Watts to give entirely a lump sum payment? It does not. Indeed, this point was made by the Court in Lee, where the same language in whole and in part was involved in the Texas statute. And the court appeals, and Lee said, the district court has no discretion here. That's a clear error of law. No discretion to give at least $1 in the future. The Watts case is clear on this, too. The exercise of that discretion has to be by reference to the medical damages, the future medical damages, that is evident at trial, the evidence of what those are. So it would be reviewable for abuse of discretion, you think, in Missouri if the trial court gave too much as a lump sum? But this is an error of law here to refuse to do so at all. And that's the point we're making here. The district court does not have the discretion to refuse to give anything for future medical damages. It must do so by reference to the evidence in the record. In this particular case, we don't even have a specific finding, again, required by Missouri law, statutory law, that says the future medical damages must be itemized. And the district court simply didn't do it. That's in 538, 515. And we didn't have the district court make a present value determination, again, required by the statute, 515. And the district court refused to do so because it didn't find it in the best interest of the plaintiff to make the future payments. But the Missouri statute doesn't have any best interest inquiry. The same inquiry was in Lee where exactly the same argument was made. I argued it. And the Court of Appeals in Lee, at pages 10 and 11, rejected that whole argument. The best interest analysis only applies where you have a situation where the district court is not applying a future payment statute. The state legislatures in each of these states have made a determination of where the respective interests are. And with respect to future medical damages, the best interest inquiry simply is not part of that statutory inquiry. Again, the Lee case is squarely on point on that. There was some discussion in the briefs about two different interest rates applying. Does any of that matter? It doesn't, and I'll tell you why. Interests to be paid by the United States on judgments are controlled by federal law. The Supreme Court has so held that interest is never payable on anything by the United States unless it's set forth in a statute. We have a statutory scheme here, 28 U.S.C. 1961, coupled with 31 U.S.C. 1304, which specifies post-judgment interest. Now, what plans are referring to are the interests that the Missouri statute says on the periodic payments that the other provider has to do. Well, that only applies where the provider himself is obviously keeping the money and is paying these things out. That's the normal course as these statutes are applied. The United States proposes to pay the entire lump sum into the trust. Therefore, the corpus of the trust has a full benefit in the investment value, the present value, if you will, of the entire judgment. We don't know how much that judgment is. I thought his point was that the plaintiff would then be worse off because your earnings will be lower than what the provider would earn. And that's wrong where you have a whole corpus of the trust having the entire judgment. Because the trust then has the means, and the Fourth Circuit addressed this in Cebulla, the trust has the means to invest that at any interest rate at once. So it's not controlled by the statutory interest rate? Wouldn't be because it doesn't apply. You still approximate the recovery because you have periodic payments being made, which is what's required. You still have reversionary interest because that approximates the fact that a private provider is entitled to cease payments upon the death of the plaintiff. Those are the things that you're approximating here. You're still approximating the fact that security is returned under the Missouri statute upon the death of the plaintiff. What you wouldn't necessarily apply is the interest requirement be paid on periodic payments because the corpus of the trust has the full judgment. You say it wouldn't necessarily apply. I don't see how you would apply it. It simply doesn't apply at all. So how would the interest rate be determined then on this trust? The interest rate would be paid under the federal law on the judgment from the day the judgment is filed with the Secretary of the Treasury to the day before the mandate of affirmance. And that is paid as part of the judgment that's paid into the corpus of the trust. The trust then has the entire amount to invest at any way it wants. All right. So you're saying the trust could earn the same interest rate that the provider could earn under Missouri? And indeed perhaps even greater because right now interest rates are rising and probably will continue to rise. Interest rates now are historic lows. So the trust is likely to outperform the present value calculation if it's done so on the basis of current interest rates. But I do not envision that this trust will ever lack for funds to pay this judgment because the trust itself will have all the money of this judgment to invest as it sees fit. And that's a complete solution to the quandary that planes pose here. But in any event, these are something that the district court can deal with on remand because that's really not before you how to structure the trust because the district court here committed the fundamental legal error of refusing to do so at all and, therefore, refused to exercise the discretion that the Missouri statute mandates that the district court exercise. Now, I don't think there's any dispute here that a refusal to exercise discretion is an error of law, and that's what we're asking this court to reverse. And, indeed, I don't see any real distinction between the Missouri statute, the Texas statute, the Washington State statute or the California statute or the Colorado statute that were issued in these other cases. They are materially, in principle, the same. And I don't see any reason that this court would wish to go into conflict with these four other circuits on this very basic point that as a matter of sovereign immunity, the United States is entitled to structure this award in a manner that approximates the liability of the private provider. The Supreme Court has spoken on this, the circuits, this court has spoken on this, that underlying principle seems to be rock solid. And if that principle is accepted, then there's really no alternative but to remand the case to the district court with instructions, just as these four other circuits have done so, to fashion an award that approximates the award mandated by the Missouri statute. There's no issue here that the United States waived it. There's no issue here that the United States properly requested it. So the issue is very plain and very simple question of law. We ask the court to reverse for that reason and remand with that instruction. I'm happy to take any further questions. I'd like to reserve my time. Thank you very much. We will next hear from Mr. Gannon. Thank you. Your Honor, at its core, the government's position here is on principle, a very key term in this argument. It's unsupported, it's inequitable, and it's wrong, both under federal law and in this particular case under the application of Missouri law. At the core, I truly hope that this circuit will examine the fundamental federal law, the one that counsel for the government has just brought up, and see that this is a misapplication and has been something that has been not examined properly since its very early inception. This is an example of the federal government's power to hammer at a case over and over again, even having been turned down by almost all of these circuits that he's mentioned, until finally they find a weak point and they get partial decisions, and now they're trying to steamroll it through. Although I implore the court to examine the legal issue and set it straight, I must first address the fact that the reversionary trust is a fantasy here, and it cannot be applied in this case under Missouri law. It is inappropriate, and it would not give anywhere near the statutory relief required by Missouri law to the plaintiff. The government here has never, not once, ever actually suggested what the structure of this imaginary reversionary trust is or what it would be. They prefer to wave their hand magically and say, don't worry about it, the trial judge can work it out. The First Circuit, as we've cited in our brief, discussed this quite well when they actually examined this issue years ago, and I'm going to quote from them if it's okay with the court, stated on this very issue, many things are possible in theory. For example, moving faster than a speeding bullet, leaping tall buildings at a single bound, but to transform theoretical possibility into actuality without the faintest shred of precedential support is a feat more suited to disciples of Blackstone on magic than the students of Blackstone's commentaries. The carefully landscaped terrain of FTCA allows for no such necromancy to be practiced. The damages law in this case is that of Missouri. There is no conceivable way for a trust, reversionary or whatever, to even approximate the damages under Section 538.220, and the Watts case illustrates that perfectly. The final word on the application of Missouri law, the Missouri Supreme Court has said specifically, they have actually specifically defined the application of the periodic payment scheme in the Watts case, and there's no contrary authority. Watts requires that the defendant remain liable for these payments throughout the lifetime. It's the defendant's choice to elect that option. Under that option, Watts requires the defendant to remain responsible. The Supreme Court also determined that... It's the court that determines what, if any, part of the awards shall be subject to the periodic payment schedule, and the judge in this case has done exactly that. Well, let me ask you about it. You say what, if any, part. The statute says in whole or in part. In whole would mean if any. I mean, in whole would mean... No, it says periodic payments shall be ordered in whole or in part. So it's either all periodic or part periodic, is the government's argument. But there's no... And Watts makes pretty clear, as I think I can explain or set out in the case, that there is no bottom line there. It can be $1.00. It can be $0.00. The part has to do with the... How can it be $0.00 is what I'm trying to figure out. Because you're saying the judge has already made the determination under Watts. Apparently you're saying to make periodic payments $0.00. No, I would not go so far as to suggest that they... I actually agree with the government's position on that. He did not reach that point. He used his discretion and issued a lump sum, but he believed he was not, under the law, it was not proper to consider a reversionary trust per the government. But you agree that under Missouri law he could not do a lump sum payment 100% if the defendant requests periodic? Your Honor, I do not agree with that. I believe that's an issue that's undecided by the courts. The only decision on this of any authority whatsoever is the Watts decision. What's your argument that under Watts and the statute, the court has authority to make 100% lump sum payment if the defendant requests periodic? I believe it would be the Watts discussion in the majority opinion, which they specifically rejected the minority opinion suggesting what you're suggesting. They said that it's up to the judge in whole or in part. I'm sorry, they say in the Watts opinion, in whole or in part means that the award can be anything. It can be up to the judge's discretion. I'm sure there may be later elucidation on this point, but under Watts right now there is no definition other than that. We're more concerned... Just so I'm clear, your position is that in Missouri, a trial court, when the defendant requests periodic payments on future medical damage, the trial court can say, no, I'm going to give 100% lump sum payment. The Watts court was very clear on this one point, Your Honor. It said it is not the position of the defendant to help define how those medical payments are paid. For instance, if the judgment was not sizable, let's just say it was $100,000, and the plaintiff needed an operation which was going to cost $125,000, it would absolutely, under Watts and under the statute, be the judge's discretion to say, I'm not going to spread this out $10,000 over a year and have this gentleman die so that you can get some money back. Here's the $100,000 you've got. Watts makes it extremely clear that the judge has that discretion. Your answer is yes, the judge may order 100% lump sum even if the defendant requests, if the facts are as you hypothesized. Not word for word, but I believe the example I gave is in Watts. Did Judge Autry do that in this case? He did not reach that point. He made a determination that under the law, a reversionary trust would not satisfy the law. You're not saying he decided that I need to give 100% lump sum payments because of a scenario like you just outlined? No, what I'm saying is that he clearly made a determination that a reversionary trust would not work under this statutory scheme, both because of the federal law and because of the state law. Your Honor, a reversionary trust, a trust here will not work, and a reading of the Watts decision will illustrate exactly why it cannot work. There's no trial judge who can design one that will work. The reason is this. Under Missouri law, and in this case tried under Missouri law, the future medicals, all of the future damages are reduced to present value. The money that we're talking about in this particular case has been reduced to present value, and the government is just wrong when they suggest it hasn't been. The number that was awarded was a present value number, and if you take that present value number, and this is what the government wishes to do, they wish to absolve themselves of the responsibility that they have under the statute to remain liable for these monies. The Watts decision says you can't do that. You can't just take it to present value under whatever figures your economists argue, and there was a vast difference in those figures, and then divide it up over the lifetime of this person with the nonexistent interest rate in the statute because it will not pay for the actual medical bills. Watts says specifically if the defendant chooses this periodic payment, in effect the present value has to be unbundled, and you have to pay the actual value divided up in the periodic scheme over time. That's what the Watts decision says, and you have to provide an interest rate. Specifically, the Watts decision says you have to look and apply the inflation rate of health care to those figures. No trust with one payment of one res at present value can do that. It can't unbundle things, and it can't magically, no matter how skilled the judge is in designing such a trust, it can't get whatever interest rate it wants, and this is the second point. The government wishes to speculate wildly so that it can get its reversionary interest and money back. The higher an interest rate is, the more money stays, the less money is put in there, the more money stays in the trust, and the more the projected payments will be in the future, and if the plaintiff dies, then the government has more money left. The plaintiff's interest is exactly the opposite. They want as safe and low an interest rate as possible. They want to keep that stable so that the payments are there to provide that necessary medical care throughout their life. No closed-end trust can do that. There is not an economist in the world who can design one that will. The particular Missouri statute is much more similar to the Louisiana statute that was examined in Van Noy. It's not exactly the same because that was more open-ended, but here, under the Watts decision, this is the state law that applies. The federal government asks this court, as they ask every court, to ignore protections for the plaintiff and to only adjust a trust which will protect the back-end rights of the defendant, the government in this case. Surely that shouldn't even be considered by this court. If equity is going to be applied to try to adjust a trust in any regard, it must be fair to both sides. After all, we're talking about a veteran who is permanently and severely disabled and sits to this day in a wheelchair without these medical payments while we argue about this. It would be the height of impropriety to then go ahead and say, well, the government is entitled to something that satisfies their part of the statute, but you only get something that kind of looks like. That is what the government is doing here. They are asking this court to give the plaintiff something that kind of looks like relief. Well, how would you deal with these other four circuit cases that set up the reversionary trust? Are you saying there's some material difference between Missouri law and the laws of those states, or do you just say that those are all incorrect as you started out your argument by saying? Your Honor, I think it's no secret by my brief or anything that I have to say that I think that there is part of the reasoning in each of those cases which is wildly incorrect. I'd like to address that, but that's not actually an answer to your question, and the answer to your question is those four cases don't set up trusts. Some of them say that it would be proper. One of them says that you would have an obligation to do so if it could be done under the statute. The Fifth Circuit, for instance, has two different decisions. Under one statute, it says it's appropriate. Under another statute, it says it's not appropriate. But if you look at the one case that, and this is not the primary objection, but I will tell you the one case that all of these cases in this new Fifth Circuit case relies on, it's Dutra. Dutra versus the United States out of the Ninth Circuit, and I urge you to read that case because it offers not one shred of precedential support. It refers not once to the statute. The Dutra finding suggests that the rules of equity apply to FTCA considerations, and it says specifically in Dutra, which is repeated in this Fifth Circuit, this new Fifth Circuit case, and in other cases, that the FTCA authorizes the court to craft new remedies. Now, Your Honors, this is a very essential point for the court's interpretation of the FTCA. The government relies on one fundamental core principle, which is absolutely unsupported, but it is there and has been followed for 30 years. We trace it back to one Third Circuit decision, Frankel case, Frankel v. Heim, where the court decided that because the waiver of sovereign immunity has to be, the FTCA has to be strictly, conservatively reviewed, and therefore no remedies that are not specifically set out in the FTCA can be permitted. That mantra is repeated over and over again in the cases, and it is the basis for the government saying that they're not susceptible to periodic payments, to continuing obligations. There is no other authority for it. I have searched and searched. The cases themselves have looked at it and found no true authority. The FTCA is not so restricted. The only basis for this is the words, the government shall be liable for money damages, and the implication, without any study, that because the common law provided for money damages in only lump sums, that that's what they must have meant. Well, the government has been, and the legislature, has been very capable of saying, at common law, such actions as at common law, when it means it. It's in our Constitution. It's in our state Constitution. It's in our federal Constitution. They did not put it here. So the government wants two things. They want a strict, restrictive, conservative view of the FTCA, which, by the way, is applied across the board. There's no equitable tolling. There's no consideration for delay. There's no consideration for incompetency, for missing any deadlines under the FTCA under that same exact standard. But now the government wants this court, as it has been able to convince occasional courts here and there, to say that the standard is that the FTCA somehow allows you to craft new remedies. It does not. If it does, Your Honors, I implore you, apply that rule straight across the board with the FTCA. And the first thing we could do is apply it to that determination that has no foundation that the government cannot be liable for continuing obligations. It can be. It is in many other contexts. There's no constitutional basis for not doing it. There's none cited in any of the cases. If you trace back the cases, there's one Third Circuit mention of this that's been repeated over and over again. So if, indeed, this court has the power to craft new remedies, to decide that we can do a sort-of-it-looks-like type of remedy, even though that doesn't really work in this case because of Missouri law, then this court, by the government's own admission, own argument, has the power to say that the government can sustain these continuing obligations. And Mr. Pennack should get up here and recognize that that's so. And if he does, then think of that. The entire problem is gone. They get the reversionary interest. They hold the obligation. Most importantly, to my argument, on behalf of my client and other citizens of the United States, they are protected by the good word of the United States for these continuing payments throughout their life, pursuant to the schedules. The fact is there's not a word in the FTCA, not one, nor any other case that originally does it other than Dutra, that authorizes this court or anybody else to craft new remedies. The Ninth Circuit, that panel, those years ago, made it up. It's unsupported, and it's not so. How is this other legal issue before us, this issue of whether the government can be liable for ongoing obligations? Well, the government is asking you to change the law. The government is asking you to create... Which doesn't exist in the law. The statute doesn't provide it or anything else. He's asking you to create new law. I'm asking you what basis do we have to address whether the government can be liable for ongoing obligations? Is that an issue that the district court ruled on? Is that an issue that you appealed? Yes, Your Honor. It's the fundamental core of this entire argument. If that wasn't the case, then the statute... The FTCA applies and says specifically, and I don't think there's any disagreement, that the government shall be liable as a private citizen. The government should be liable as a private citizen. Did you appeal the district court's refusal to order periodic payments? The court did the right thing here. Because the government refused. That's all that's before us, is whether the lump sum was appropriate or the reversionary trust. No, Your Honor. You haven't put before us the option of ordering periodic future payments. Well, aside from the fact that it is in our brief and it is thoroughly covered in that issue, it addresses the very point that is raised in the appellate brief, that it can't be done. The appellant, in order to raise this issue whatsoever and to suggest this idea, has to and has presented to this court the idea that they are not liable for this. If the government wanted a trust that they could pay in a lump sum and get out of this obligation, they could have tried this case on the basis of the actual damages as opposed to the present value. They could have told the court that and done it, but they didn't. They put on two days of economic testimony reducing this to present value and arguing about that. Now they want to take that present value and make it the final thing and walk away. They can't do that. They can accept the periodic payments or they can pay the present value. It's really there are only two choices. What happens if this trust goes bust? The person liable under the Missouri scheme is gone. What happens if the trustee misbehaves? Who pays the trustee? Are you suggesting that the trial court actually has authority to increase the damages for administrative fees? Are you suggesting that my completely disabled and these are just medical expenses we're talking about, the client has to pay them out of some trust? What happens if your client dies tomorrow? The government gets all the money. Under your view of the case? No, right now. Under your view of the case, your client's estate gets a windfall. I would so strongly object to the term windfall here, Your Honor. How would you describe it? My client without a lifetime of immobility and inability to raise his family, a man who's taught his kids everything that they know, who stood by his family, and for their entire lifetime, if he had worked and he had been saved, he would have an estate and he would have something to leave to them. We're talking about future medical damages. We're talking about future medical damages, not his earnings. We're talking about future medical damages, right? We are. All right. So if you don't like it's a windfall, how would you describe the fact that the estate would receive money for medical payments that are never going to be needed? Isn't that what this case is about? I would say it was extraordinarily poor compensation for the death and the loss of their father. I would say, Your Honor, that because he may die in the future, because he's settled here, there is no wrongful death case under the law because the case has already been decided. Whereas they could have brought a wrongful death case for the loss of the care, comfort, and society. The windfall issue is something that I think comes in here. If it's equity that this court is looking for to the government, that it would be unfair that somebody gets money, well, let it be people who actually have suffered the loss rather than the government who did the damage. Your Honor, I don't see any point where we're getting into the idea that a windfall is improper in this case. The government chose to insist that it will not pay periodic damages. The government chose to say, We will not be subject. We will not be subject to the state statute. But now they want only the end benefits. If a trust could be set up which would protect this client, then so be it. But no trust is possible to do what the Watts decision says, to unbundle those damages for the future and make those payments and guarantee them none. Thank you. Thank you very much. Is additional time available for the government? Yes, Your Honor. May it please the Court. It's hard to know where to start. As to Watts, the Supreme Court of Missouri in that case did not set aside the requirement to set future payments. It affirmed the requirement and simply remanded for recalculation of the interest rate. It said in plain language, and I quote, Section 538.2.20.2 plainly requires the trial court to include in the judgment a requirement that future damages be paid in whole or in part. The language of this statute says shall include. The very same shall usage was in Lee, the Texas statute, in Colorado, in the California statute, and in the rest of these cases. The point on this is it's a mandatory duty. And the Lee case makes that clear. It's not discretionary. It has to exercise discretion. The point on this is that Watts does not make this discretionary. There's nothing discretionary except for the whole or in part. And that, Watts also makes clear, has to be exercised by reference to the actual damages proof in the case. We have a veteran here who my heart goes out to as well. My father was a veteran. I feel for these people. There's no question about that. But there's not an issue of equity here. It's a question of what the Federal Court Claims Act allows. Now, plaintiffs say that Federal Court Claims Act does not allow this court to fashion a remedy that approximates. Well, the Dirig case did not make that up from whole cloth. It cited the Supreme Court's decision in Olson, 2005. Every circuit to look at this in different circumstances, ranging from damages cap to this very issue to other types of liability imposed by state statute, have held, and it's all cited in footnotes and in our brief, that this Federal Court Claims Act authorizes, indeed requires as a matter of sovereign amenity, the district court to approximate the damages of remedies that would be allowed under state law. For the court to hold that there's no such remedy would be truly astounding and would be in conflict with every other circuit to reach this question. The question as to future medical damages, we do not know on this record what they are. It was disputed at trial what the future medicals would be. The district court did not specify, contrary to the statute itself, 515, 538-515, that requires plainly that future medical damages be separately set forth. It didn't do it. In the very next section, all future damages as optimized as required by subsection 1, shall be expressed by the prior effect as present value. You will not find that calculation in this district court's opinion. We don't know what it is because we don't know what the sum is. We can't know. So we're not asking for special benefits here. Indeed, it surprises me for plaintiff's counsel to stand before this court and say that his client's going to be harmed. His client is going to get a lump sum of the entire judgment, which his trust is free to invest any way it sees fit. He's no worse off by that. The only thing that he's possibly going to lose is the windfall. And it is a windfall because those future payments for medical services will not be rendered under the Missouri statute if the plaintiff dies early. He doesn't receive those services. The state legislatures of these states have made this policy determination that those future payments for medical services should not be something that the heirs should have. That's binding on this court. And every other circuit has recognized it. It's not an open question, really. Well, can you address the argument that the trust will not necessarily provide the same amount that would be provided under the Missouri law if this were a private plaintiff? I don't understand the argument. Plaintiffs are no worse off than they are now with a lump sum. Paying a lump sum either way. Before you now, plaintiffs would be in exactly the same position they would say they don't like because they're getting a lump sum payment. The uncertainty associated with that lump sum payment is no different. No. If it were a private defendant, there would be a periodic payment. That's what you're trying to approximate, you said. Yes, but that payment would be made out of the trust where the corpus is completely there and free to be invested. But he's saying that might not amount to the same as what he would get. Well, that's true even if we were here today because presumably he would like to take the lump sum and allocate that over time to pay for these future services. The man is severely brain injured. He's going to need lifetime care. They're going to have to allocate that for his lifetime. That's true under our trust situation or it's true under the lump sum we have now without a trust. No, what about under the periodic payment? Well, the periodic payment is the Missouri Supreme Court, and Watts says you have to take into account the escalation of future care, what the interest rate will be. Now, we don't have that problem here because the defendant, the United States, is not retaining the money and is not paying interest on that money because it's not retaining the money. He's paying the money into the trust in one lump sum. So that trust bears that risk, if you will. Right, so what if the trust bears the risk and it loses on the risk? And that would be true for a lump sum payment without a trust, rather. But isn't that the wrong comparator? We should be comparing not to the lump sum without a trust. We should be comparing to the periodic payment. The periodic payment, that interest rate discussion would only apply if the defendant was retaining the money over time and paying it as the Missouri statute anticipates. Well, the United States isn't doing that. Well, I know, but that's the remedy you say we should be trying to approximate. Well, that may be. Right now, we don't know what that figure would be because the district court didn't make the findings required by 538. How could it be approximated? Can you explain how the trust remedy would approximate the periodic payment remedy against a private defendant once the district court determines that future medical inflation rate? What I'd like to say first, to preserve the point, that we don't think that the lump sum is paid into the trust that the district court needs to do that because they're paying for no worse or two, but the district court then would have discretion at this point to specify the future medical damages, apply the present value that he hasn't applied that we could tell, so at least there's no finding of it, and make a discretion as to how to apply the Missouri statute under what. He hasn't done that either. All this stuff he can do on remand. We don't know how the district court's going to do it because we don't even know from these findings how much future medical damages are at issue. As we said in our briefs we filed with the district court. That's a new dispute. We think it's somewhere between 3 to 3.7 million, but we don't know. That's contested. We don't know that the amount of money they were seeking for future medicals is different than what the district court awarded. The district court awarded future economic damages without differentiating between future earnings and future medicals. These are something that has to be remanded. What we're asking this court to do for legal ruling, and there's a limit of legal ruling, is say you've got to at least try. You've got to approximate it and go back and try. Because that's what every other circuit has held. The district court here refused to even try, saying that the basis of that legal ruling was that he had no obligation where the defendant hadn't shown it was in the best interest of the plaintiff. That's precisely the reasoning that the Lee court rejected, and that was precisely the reasoning that the Tenth Circuit rejected and held. We applied the Colorado statute with respect to future medical damages, and that's how every other circuit has read him. Now, we agree that with respect to future earnings, it's a best interest inquiry. It is pertinent. We haven't asked for that here. We're asking only for this future earnings. We're not asking for future earnings at all be allocated over periodic payments. We're asking for only medical damages, future medical damages be allocated over future payments. This is something the district court has never undertaken at all, and it has the obligation to do so under Missouri law. It's a mandatory duty. As the Fifth Circuit said in the Lee case, when it excludes exactly the same language, shall do so upon request, there is a mandatory duty. The district court doesn't have discretion. For that reason, the district court's refusal should be reversed. In the case of revandit record, the district court should apply the Missouri statute in a way that approximates the liability of a private defendant. If there are no further questions, I ask the court to do so. Thank you very much. To say the least, it's an interesting case. It's been presented well by both sides. These are very sophisticated issues. We will take it and do what we can with it. Somebody is not going to be happy. However, that's the nature of what we do. With that, we thank you for your presence here this morning. Thank you.